1

2

3

4                       UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    CHARLYN GREENE,                          Case No. 19-cv-06651-EMC

8                        Plaintiff,

9         v.                                  **ORDER GRANTING DEFENDANT'S**
                                              **MOTION TO DISMISS**
10   TRUEACCORD CORP.,
                                              Docket No. 22
11                       Defendant.

12

13

14          Plaintiff Charlyn Greene has filed a class action against Defendant TrueAccord Corp.

15   ("TA"), asserting claims pursuant to the Fair Debt Collection Practices Act ("FDCPA") and its

16   California analog, the Rosenthal Fair Debt Collection Practices Act ("RFDCPA").  *See* 15 U.S.C.

17   § 1692 *et seq.*; Cal. Civ. Code § 1788.  Currently pending before the Court is TA's motion to

18   dismiss the first amended complaint ("FAC").

19          Having considered the parties' briefs and accompanying submissions, as well as the oral

20   argument of counsel, the Court hereby **GRANTS** TA's motion.  Because amendment would be

21   futile, the dismissal of the case is with prejudice.

22                    **I.        FACTUAL & PROCEDURAL BACKGROUND**

23   A.     General Legal Background on the FDCPA

24          As an initial matter, the Court provides some general legal background on the FDCPA.

25   The FDCPA claim is the main claim in the instant case; the RFDCPA claim is derivative of the

26   FDCPA claim.  Background on the FDCPA provides context for the specific theories of liability

27   asserted by Ms. Greene.

28          The general purpose of the FDCPA is "to eliminate abusive debt collection practices by

United States District Court
Northern District of California

United States District Court
Northern District of California

1  debt collectors." 15 U.S.C. § 1692(e).  Thus, for example, the FDCPA contains provisions

2  prohibiting harassment or abuse by debt collectors, as well as false or misleading representations

3  by debt collectors.  *See id.* §§ 1692d, 1692e.  As an example of the latter, the FDCPA provides

4  that a debt collector makes a false, deceptive, or misleading representation by failing to disclose in

5  the initial communication with the consumer – whether written or oral – that the debtor collector is

6  attempting to collect a debt.  *See id.* § 1692e(11) (referring to "[t]he failure to disclose in the initial

7  written communication with the consumer and, in addition, if the initial communication with the

8  consumer is oral, in that initial oral communication, that the debt collector is attempting to collect

9  a debt").

10       For purposes of the instant case, the critical FDCPA provision is one that concerns the

11  validation of debts.  Title 15 U.S.C. § 1692g provides in relevant part as follows:

12       (a) Notice of debt; contents.  Within five days after the initial
   communication with a consumer in connection with the
13  collection of any debt, a debt collector shall, *unless the following
   information is contained in the initial communication* or the
14  consumer has paid the debt, send the consumer a written notice
   containing –

15       (1) the amount of the debt;

16
        (2) the name of the creditor to whom the debt is owed;
17

18       (3) a statement that unless the consumer, within thirty days after
   receipt of the notice, disputes the validity of the debt, or any
19  portion thereof, the debt will be assumed to be valid by the
   debt collector;

20       (4) a statement that if the consumer notifies the debt collector in
   writing within the thirty-day period that the debt, or any
21  portion thereof, is disputed, the debt collector will obtain
   verification of the debt . . . and a copy of such verification . .
22  . will be mailed to the consumer by the debt collector . . . .

23  15 U.S.C. § 1692g(a) (emphasis added).  The notice referenced above is often called the

24  "validation notice."  *See, e.g.*, *Hipolito v. All. Receivables Mgmt.*, No. C-05-0842 JCS, 2005 U.S.

25  Dist. LEXIS 48404, at *10 (N.D. Cal. July 15, 2005).  The thirty-day period during which the

26  consumer may dispute the debt is often called the "validation period."  *See, e.g.*, *Palmer v.*

27  *Stassinos*, 348 F. Supp. 2d 1070, 1083 (N.D. Cal. 2004).

28       To the extent § 1692g(a) refers to a written validation notice, the Electronic Signatures in

2

United States District Court
Northern District of California

Global and National Commerce Act ("E-SIGN Act") comes into play.  The E-SIGN Act provides that consumer disclosures may in certain circumstances be communicated electronically.  Title 15 U.S.C. § 7001(c)(1) provides in relevant part as follows:

> Consent to electronic records. . . . [I]f a statute, regulation or other rule of law requires that information relating to a transaction or transactions in or affecting interstate or foreign commerce be provided or made available to a consumer in writing, the use of an electronic record to provide or make available (whichever is required) such information satisfies the requirement that such information be in writing if –
>
> (A) the consumer has affirmatively consented to such use and has not withdrawn such consent;
>
> (B) the consumer, prior to consenting, is provided with a clear and conspicuous statement –
>
>   (i) informing the consumer of (I) any right or option of the consumer to have the record provided or made available on paper or in nonelectronic form, and (II) the right of the consumer to withdraw the consent to have the record provided or made available in an electronic form and of any conditions, consequences (which may include termination of the parties' relationship), or fees in the event of such withdrawal;
>
>   (ii) informing the consumer of whether the consent applies (I) only to the particular transaction which gave rise to the obligation to provide the record, or (II) to identified categories of records that may be provided or made available during the course of the parties' relationship;
>
>   (iii) describing the procedures the consumer must use to withdraw consent as provided in clause (i) and to update information needed to contact the consumer electronically; and
>
>   (iv) informing the consumer (I) how, after the consent, the consumer may, upon request, obtain a paper copy of an electronic record, and (II) whether any fee will be charged for such copy
>
> (C) the consumer –
>
>   (i) prior to consenting, is provided with a statement of the hardware and software requirements for access to and retention of the electronic records; and
>
>   (ii) consents electronically, or confirms his or her consent electronically, in a manner that reasonably demonstrates that the consumer can access information in the electronic form

3

that will be used to provide the information that is the subject of the consent . . . .

15 U.S.C. § 7001(c)(1).

B.    Initial Communication from TA to Ms. Greene

According to Ms. Greene, on March 21, 2019, TA attempted to collect an alleged debt from her.  The alleged debt had purportedly originated with Bank of America, N.A. but Cach LLC was the asserted current owner.  *See* FAC ¶¶ 9-12.  The initial communication that TA sent to Ms. Greene was via email; that initial communication included a validation notice (*i.e.*, a validation notice was not sent separately after the initial communication).  The validation notice included the following information: "'If you notify us in writing within 30 days from receiving this notice that you dispute all or any portion of this debt, we will obtain verification of the debt . . . and send you a copy of such verification . . . .'"  FAC ¶ 14.

Ms. Greene asserts that TA "violated the FDCPA . . . by sending [her the] initial communication[] via e-mail without complying with the E-Sign Act."  FAC ¶ 23; *see also* FAC ¶ 41(a) (asserting that "Defendant's use of e-mail to provide the validation notice as required by the FDCPA is a violation of the FDCPA . . . and E-SIGN Act").  Ms. Greene also contends that TA's email above violated the FDCPA – specifically, § 1692g(a)(4) – because the email referred to "send[ing]" a copy of the verification of the debt whereas § 1692g(a)(4) specifies that a copy of the verification will be "mailed."  *See* FAC ¶ 16 (asserting that TA "effectively changed the wording of [the FDCPA] by removing the word 'MAILED' and replacing it with the word 'SEND'").

C.    Additional Communications Following the Initial Communication

As alleged in the operative complaint, upon reading the email from TA, Ms. Greene saw a link embedded in the email that purportedly would give her more information about the alleged debt and her options.  *See* FAC ¶¶ 22, 27.  She clicked on the link and was taken to a website that she did not recognize; thus, she immediately closed the browser.  *See* FAC ¶ 28.

Just a few hours later, TA sent Ms. Greene another email attempting to collect on the alleged debt.  *See* FAC ¶ 29.  More emails were sent on March 29 and April 1, 5, 8, 18, and 22, 2019 (*i.e.*, during the thirty-day validation period).  *See* FAC ¶ 30.  According to Ms. Greene, the

4

"barrage" of emails confused her and "overshadowed the [validation] notice" included in the initial communication – which contained the required FDCPA language that she could dispute the debt within the thirty-day validation period.  FAC ¶¶ 32-33.

D.     Theories of Liability

As reflected by the above, Ms. Greene has essentially asserted three theories of liability in support of her FDCPA claim (as well as her derivative RFDCPA claim):

> (1) TA's "use of e-mail to provide the validation notice as prescribed by the FDCPA is a violation of the FDCPA . . . and E-SIGN Act";
>
> (2) TA's "use of the word 'send' instead of the word 'mailed,' as required by 15 U.S.C. § 1692g(a)(4), constituted [a] violation[] of the FDCPA"; and
>
> (3) TA's "follow up collection e-mails overshadowed or were inconsistent with the validation notice."

FAC ¶ 41.

## II.     DISCUSSION

A.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

In the instant case, TA argues that Ms. Greene has failed to state a claim for relief with respect to all three liability theories. Because the FDCPA claim is the main claim, the Court focuses on the FDCPA claim first.

B.     FDCPA Claim

1.     Sending Initial Communication and Validation Notice Via Email

In her first theory of liability, Ms. Greene contends that TA violated the FDCPA by sending her the validation notice by email – as part of the initial communication – without complying first with the E-SIGN Act.

As noted above, the FDCPA contains the following provision which is relevant to Ms. Greene's first theory:

> (a) Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, *unless the following information is contained in the initial communication* or the consumer has paid the debt, send the consumer a written notice containing –
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt . . . and a copy of such verification . . . will be mailed to the consumer by the debt collector . . . .

15 U.S.C. § 1692g(a) (emphasis added).

It is clear that, under the statute, if the validation notice is *not* provided along with the initial communication, then the debt collector is required to provide the validation notice to the

United States District Court
Northern District of California

debtor *in writing* within five days after the initial communication.  It is also clear that, in this specific situation, the validation notice may be provided by email only if there is compliance with the E-SIGN Act.  *See* 15 U.S.C. § 7000(c)(1) (providing that, "if a statute, regulation or other rule of law requires that information relating to a transaction or transactions in or affecting interstate or foreign commerce be provided or made available to a consumer in writing, the use of an electronic record to provide or make available (whichever is required) such information satisfies the requirement that such information be in writing if [*inter alia*] the consumer has affirmatively consented to such use and has not withdrawn such consent").

TA argues, however, that the statute does not put any restrictions on how a validation notice may be conveyed when it *is* part of the *initial communication*.

TA is correct that the statute on its face does not impose any express restrictions when a validation notice is a part of the initial communication.  Indeed, the FDCPA actually indicates that an initial communication may be made *orally*, not just in writing – which has led several courts to hold that a validation notice accompanying an oral initial communication may also be provided orally; it need not be in writing or compliant with the E-SIGN Act.

For example, in *Kasalo v. Trident Asset Management, LLC*, 53 F. Supp. 3d 1072 (N.D. Ill. 2014), the district court noted that, under the FDCPA, "[t]he [validation] notice must be sent '[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt,' except in situations where the required information 'is contained in the initial communication.'"  *Id.* at 180 (quoting 15 U.S.C. § 1692g(a)).  In addition,

> [a]nother section of the FDCPA addresses required communications between the debt collector and the consumer.  It states that a debt collector may not fail to disclose in the initial communication to a consumer that it is trying to collect a debt and that any information it obtains will be used for that purpose.  The subsection proscribes such a failure "in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that communication."

*Id.* (quoting 15 U.S.C. § 1692e(11)).  Based on § 1692g(a) and § 1692e(11), the court held that, "it is fairly clear that a debt collector may convey the required 1692g(a) information to the consumer in the initial communication and that the FDCPA contemplates that the initial communication may

United States District Court
Northern District of California

be oral." *Id.*; *see also Derisme v. Hunt Leibert Jacobson, PC*, No. 3:10cv244 (MRK), 2010 U.S. Dist. LEXIS 119351, at *10-11 (D. Conn. Nov. 10, 2010) (stating that "§ 1692g(a) requires that a debt collector provide one FDCPA-compliant notice to a consumer[;] [a] debt collector may be liable under § 1692g(a) for failing to include the required information in an 'initial communication' – written or oral – with the consumer, or for failing to send a written notice within five days of an initial communication that did not include the required information"); *Potvin v. Paul Law Office, PLLC*, No. 11-cv-308-LM, 2012 U.S. Dist. LEXIS 73209, at *16-17 (D.N.H. May 25, 2012) (holding that "a failure to provide the written notice required by § 1692g(a) is a violation of the FDCPA only if the information described in §§ 1692g(a)(1)-(5) was not provided to the consumer in the initial communication"; here, "[t]he Potvins' allegation that they never received the written notice required by § 1692g(a) is insufficient to support a claim under that provision because, as the FDCPA recognizes, a debt collector's initial communication may be oral" and, "[a]bsent an allegation that PLO did not provide the required information in its initial communication, the Potvins have failed to state a claim under § 1692g(a)").

If there are no express restrictions as to how an initial communication can be made – and an oral initial communication is explicitly recognized – then it is a reasonable argument that an initial communication can also be made electronically. This is especially so since the statutory language contains no express limitation on the mode of the initial communication. Admittedly, as the Consumer Financial Protection Bureau ("CFPB") has recognized, some "communication technologies . . . did not exist at the time the FDCPA was passed (such as mobile telephones, email, and text messaging)." 84 Fed. Reg. 23274, 23274 (May 21, 2019). But the statutory language is open ended, and the fact that newer communication technologies have developed and yet Congress, for whatever reason, has not chosen to amend the FDCPA to account for these newer technologies, if anything, bolsters TA's position.[1] *Cf. Booth v. United States*, 914 F.3d 1199, 1205 (9th Cir. 2019) (noting that "Congress, if so minded, may establish exceptions [to the statute of limitations] for certain disabilities – including minority – and has done so in various

---

[1] The FDCPA, including § 1692g, was enacted in 1977. *See* 91 Stat. 874 (1977). Since then, it appears that the only amendments to the act were made in 2006. *See* 120 Stat. 1966 (2006).

federal statutes," but "each time Congress amended the limitation period [for the FTCA], it did not add a tolling provision"; "proposed amendments providing for minority tolling of the FTCA's statute of limitations . . . have not become law" and, "[h]ad Congress wanted to include minority tolling in the FTCA's statute of limitations, it could have done so"); *Maurice Sporting Goods v. Maxway Corp. (In re Maxway Corp.)*, 27 F.3d 980, 985 n.3 (4th Cir. 1994) (noting that, "[i]f Congress had intended a contrary interpretation of § 546(a)(1), it could have amended § 546(a)(1) to overrule these cases – particularly in 1986, when it amended § 546(a)(1)"; acknowledging that reliance on "congressional silence or inaction" is "modest evidence of what Congress intended [but] these episodes of silence or inaction constitute the only available evidence of congressional intent").  This is true even though the FDCPA expressly provides that communications can be made by "through any medium."  15 U.S.C. § 1692a(2) (defining "communication" as a "means the conveying of information regarding a debt directly or indirectly to any person through any medium").

In fact, in May 2019, the CFPB indicated its understanding that that, under the FDCPA as currently written, an initial communication can be made not only orally but also electronically.  In May 2019, in light of newer communication technologies (at least in part), the CFPB issued a proposed rule, with a request for public comment, that would "amend Regulation F, which implements the [FDCPA]":

> As the first Federal agency with authority under the FDCPA to prescribe substantive rules with respect to the collection of debts by debt collectors, the Bureau proposes to clarify how debt collectors may employ such newer communication technologies in compliance with the FDCPA and to address other communications-related practices that may pose a risk of harm to consumers and create legal uncertainty for industry.  The Bureau also proposes to interpret the FDCPA's consumer disclosure requirements to clarify how industry participants can comply with the law and to assist consumers in making better-informed decisions about debts they owe or allegedly owe.

84 Fed. Reg. at 23274.

In commentary, the CFPB noted that a validation notice as part of an initial communication *can* be conveyed via email.

> The E-SIGN Act's consumer consent provisions apply if a statute,

1

2

3

4

5

6

7

> regulation, or other rule of law requires that information relating to a transaction or transactions in or affecting interstate or foreign commerce be provided or made available to a consumer in writing. As discussed in the section-by-section analysis of proposed § 1006.34(a)(1), *neither FDCPA section 809(a) [i.e., 15 U.S.C. § 1692g(a)] nor proposed Regulation F prohibit a debt collector from providing the validation information described in proposed § 1006.34(c) orally or electronically in the debt collector's initial communication with the consumer.*   Accordingly, the E-SIGN Act's consumer consent provisions do not apply to the extent a debt collector provides the validation information in the body of an email that is the debt collector's initial communication with the consumer. However, proposed § 1006.42(a)(1) would apply.[2]

8

9

10

11

12

13

14

15

16

17

84 Fed. Reg. at 23366 (emphasis added).  Although CFPB's interpretation of § 1692g(a) is not

entitled to *Chevron* level of deference because the regulation has not become final, it is reasonable

and persuasive and entitled to consideration.  *See Somers v. Digital Realty Trust, Inc.*, No. C-14-

5180 EMC, 2015 U.S. Dist. LEXIS 64178, at *15-16 (N.D. Cal. May 15, 2015) (noting that, under

the *Chevron* framework, if Congress has not directly spoken to the precise question at issue, and

the statute is silent or ambiguous with respect to the specific issue, a court must determine whether

the agency's interpretation is based on a permissible construction of the statute; "[i]f the agency's

interpretation of the statute 'is a reasonable one, this court may not substitute its own construction

of the statutory provision' even if the Court believes the provision would best be read

differently").

18

19

20

21

22

Ms. Greene's reliance on *Lavallee v. Med-1 Solutions, LLC*, 932 F.3d 1049 (7th Cir. 2019),

is unavailing.  There, the court did not hold that an initial communication containing a validation

notice cannot be conveyed via email.  Rather, the court simply held that (1) the emails sent by the

defendant did "not qualify [as initial communications] under the [FDCPA's] definition of

23

24

---

[2] Proposed regulation 12 C.F.R. § 1006.42(a)(1) provides in relevant part: "A debt collector who provides disclosures required by this part in writing or electronically must do so in a manner that is reasonably expected to provide actual notice . . . ."  84 Fed. Reg. at 23406.

25

26

27

28

According to the CFPB, it "proposes to require a form of delivery that is reasonably expected to provide actual notice on the basis that such a requirement is implicit in the concepts of 'send[ing] the consumer a written notice,' information being 'contained in' the initial communication, and 'mail[ing]' information to the consumer."  84 FR at 23356.  "Proposed comment 42(a)(1)-1 would clarify that a debt collector who provides a required disclosure in writing or electronically and who receives a notice that the disclosure was not delivered has not provided the disclosure in a manner that is reasonably expected to provide actual notice under § 1006.42(a)(1)."  *Id.*

United States District Court
Northern District of California

'communication' because they did not 'convey[] . . . information regarding a debt" and (2) the emails did not "'contain' the statutorily mandated disclosures" since, at most, they "provided a means to access the disclosures via a multistep online process." *Id.* at 1051.

The Court cautions, however, that, even though a debt collector may provide an initial communication containing a validation notice via electronic means under the FDCPA, that does not mean that the electronic communication is thereby free from any scrutiny. As indicated above, the FDCPA is designed to protect against abusive debt collection practices by debt collectors, *see* 15 U.S.C. § 1692(e); therefore, if a debt collector provides the validation notice as part of an initial communication via electronic means, that electronic communication and the validation notice must reasonably be conveyed to the consumer. *Cf., e.g.*, *Jewsevskyj v. Fin. Recovery Servs.*, No. 15-3041, 2016 U.S. Dist. LEXIS 145587, at *11 (E.D. Pa. Oct. 20, 2016) (noting that a "validation notice must be 'effectively conveyed' to the debtor – *e.g.*, it should not be "buried in the text of the [collection] letter" or "printed on the back" of the collection letter if the "front of the letter does not contain any reference to the notice'"). Notably, the CFPB has essentially adopted that interpretation of the FDCPA by stating that

> the E-SIGN Act's consumer consent provisions do not apply to the extent a debt collector provides the validation information *in the body of an email* that is the debt collector's initial communication with the consumer.

84 Fed. Reg. at 23366 (emphasis added). Having the validation notice in the body of the email, as opposed to, *e.g.*, an attachment, ensures that the validation notice will not be hidden from the eyes of the alleged debtor receiving the initial communication.

Moreover, the CFPB has proposed a regulation which states that "a debt collector who provides the validation notice described in § 1006.34(a)(1)(i)(B) . . . electronically must," *e.g.*, "[i]dentify the purpose of the communication by including, *in the subject line of an email* or in the *first line of a text message* transmitting the disclosure, the name of the creditor to whom the debt currently is owed or allegedly is owed and one additional piece of information identifying the debt, other than the amount." 84 Fed. Reg. at 23406 (emphasis added). This ensures that the consumer's attention is focused on the email or text as many recipients of emails make decisions

11

1   to read, ignore, or delete emails on the basis of the subject line and recipients of text messages

2   look only at the first line.

3         In her papers and at the hearing, Ms. Greene seized on the "subject line" requirement of the

4   proposed regulation, pointing out that the initial communication that TA sent her via email had the

5   subject line "'This needs your attention'" – which did not convey that the purpose of the email

6   was to seek to collect a debt.  The problem for Ms. Greens is that, even if the initial

7   communication was not calculated to give reasonable notice, in her case, there is no dispute that

8   she did receive the email and that she opened up and read it.  Thus, to extent Ms. Greene asserts a

9   FDCPA violation based on the subject line of TA's initial communication email (a theory that is

10  admittedly not articulated in the operative pleading), she has no standing to bring that claim.  It

11  does not matter whether the least sophisticated debtor in the abstract could be misled by an email

12  with that subject line; Article III standing on the part of Ms. Greene must be established before the

13  merits of the claim are evaluated.  This is not to say that the initial communication in fact passes

14  legal muster.

15        2.      Use of the Term "Send" Instead of "Mailed"

16        Ms. Greene's second theory is that TA violated the FDCPA because:

17        • under the statute, a validation notice must contain "a statement that if the consumer

18              notifies the debt collector in writing within the thirty-day period that the debt, or

19              any portion thereof, is disputed, the debt collector will obtain verification of the

20              debt . . . and a copy of such verification . . . will be **mailed** to the consumer by the

21              debt collector," 15 U.S.C. § 1692g(a) (emphasis added); but

22        • the validation notice that TA gave her used the word "**send**" instead of "mailed."

23        TA argues that the second theory should be dismissed because the difference in

24  terminology is immaterial; moreover, even if there were a material difference, Ms. Greene has

25  failed to allege how she was injured through use of the word "send" instead of "mailed" (*i.e.*, she

26  has no standing).

27        As an initial matter, the Court takes note that there is no requirement that a validation

28  notice track verbatim the language of § 1692g(a).  *Cf., e.g.*, *Greco v. Trauner, Cohen & Thomas,*

United States District Court
Northern District of California

*L.L.P.*, 412 F.3d 360, 365-66 (2d Cir. 2005) (indicating that "the defendants' addition to the letter's disclosure statement would [no] mislead or deceive in any way" because "[t]he letter's language tracks the statute almost verbatim; only the reference to 'creditor differs from the FDCPA itself [and,] [w]hen read by the least sophisticated debtor, nothing in the letter's current wording would discourage a debtor from contesting the debt within the thirty day window"); *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 484 (7th Cir. 1997) (noting that letters at issue "tracked the required statutory language nearly verbatim" and that "[n]either letter contained additional, contradictory language"; concluding that "letters were not false, misleading or deceptive").[3]

Instead, the question is whether a validation notice that departs from the language "is 'likely to deceive or mislead a hypothetical "least sophisticated debtor""" – an issue that is different from what would deceive or mislead a reasonable debtor. *Terran v. Kaplan*, 109 F.3d 1428, 1431 (9th Cir. 1997); *see also Kinkaid v. Allied Interstate, LLC*, No. 8:11-cv-2288-T-33MAP, 2012 U.S. Dist. LEXIS 61887, at *6 (M.D. Fla. May 2, 2012) (stating that "[t]he question before this Court is whether the language in Allied's Validation Notice – which tracks the statutory language almost verbatim, with only minor alterations – is misleading or deceptive"); *cf. Wilson v. Mattleman*, No. 13-0237 (JEI/KMW), 2013 U.S. Dist. LEXIS 82445, at *10 (D.N.J. June 12, 2013) (stating that "[s]ection 1692g(a)(3) requires only that [defendant] convey the gist of the provision in a nondeceptive statement, not that [defendant] specifically use the term 'assume,'" which is used in the statute).

> The "least sophisticated debtor" is distinguished from the ordinary, reasonable person by being financially unsophisticated. Such a debtor is comparatively uninformed and naive about financial matters and functions as an "average consumer in the lowest quartile (or some other substantial bottom fraction) of consumer competence." Even so, the debtor has "rudimentary knowledge about the financial world." While financially unsophisticated, this debtor is not "the *least* intelligent consumer in this nation of 300 million people." Rather, the debtor grasps the normal, everyday meaning of words, and is "capable of making basic logical deductions and inferences." The least sophisticated debtor is not unreasonable and has a "basic level of understanding and willingness to read with care." In short, the least sophisticated

---

[3] Of course, "[c]ollection notices that include the statute's verbatim language have been held not to be confusing." *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005).

United States District Court
Northern District of California

1    debtor is reasonable and functional, but lacks experience and
     education regarding financial matters.

2    *Stimpson v. Midland Credit Mgmt.*, 944 F.3d 1190, 1196 (9th Cir. 2019) (italics in original); *see*

3    *also Caprio v. Healthcare Revenue Recovery Grp.*, LLC, 709 F.3d 142, 149 (3d Cir. 2013) (noting

4    that "'the standard does not go so far as to provide solace to the willfully blind or non-

5    observant'[;] [t]he debtor is still held to a quotient of reasonableness, a basic level of

6    understanding, and a willingness to read with care, and the debt collector accordingly cannot be

7    held liable for bizarre or idiosyncratic interpretations").  The Ninth Circuit has explained that

8    whether the least sophisticated debtor would likely be misled "is a legal, not a factual

9    determination," and involves an "objective analysis."  *Stimpson*, 944 F.3d at 1196.

10        Even given the least sophisticated debtor standard, Ms. Greene's position that TA's use of

11   the word "send" instead of "mailed" was likely to deceive or mislead is not plausible.  First, it is

12   notable that the words "send" and "mailed" have nothing to do with financial matters; therefore,

13   there would appear to be no difference between what the least sophisticated debtor would

14   understand and what the reasonable debtor would understand with respect to these terms.  Second,

15   "send" is a broader term than "mailed"; thus, at most, the least sophisticated debtor would

16   understand from the use of the word "send" that a copy of the verification of the debt could be

17   physically mailed or could be electronically mailed.  The latter is not precluded outright because

18   of the E-SIGN Act.  *See also* Mot. at 18 (asserting that the E-SIGN Act "permits validation

19   documentation to be provided by mail or electronically").

20        In her opposition, Ms. Greene asserts as follows:

21             [I]t is conceivable that the least sophisticated debtor, not wishing to
               receive further emails, and not aware that she is entitled to receiving
22             the validation of the debt by physical mail, would simply ignore
               Defendant's validation letter in order to avoid receiving sensitive
23             financial information electronically.  It is further conceivable that
               the least sophisticated debtor would have responded to the email
24             with a validation request had the language tracked that which is
               required by the FDCPA if she preferred to receive such financial
25             documents in physical form.

26   Opp'n at 6.  Ms. Greene's argument that the difference between "send" and "mail" is likely to

27   impact consumer behavior is speculative.  The least sophisticated debtor, if concerned about

28   getting a verification of debt via email, could always ask for a copy to be sent via physical mail

United States District Court
Northern District of California

14

1    instead.

2           Because TA's argument above is meritorious, the Court need not entertain TA's alternative

3    argument that, even if there were a problem with the use of the word "send," Ms. Greene has

4    failed to allege that she was injured as a result (*i.e.*, she lacks standing).

5           3.      Whether Subsequent Communications Overshadowed the Validation Notice

6           In her third theory of liability, Ms. Greene maintains that TA's communications sent to her

7    (1) *after* the initial communication containing the validation notice and (2) *during* the thirty-day

8    validation period constituted a "barrage" of emails which confused her and "overshadowed the

9    [validation] notice" included in the initial communication – which contained the required FDCPA

10   language that she could dispute the debt within the thirty-day validation period.  FAC ¶¶ 32-33;

11   *see also* FAC ¶¶ 29-30 (alleging that, after the initial communication and during the thirty-day

12   validation period, emails were sent on March 21 and 29 and April 1, 5, 8, 18, and 22, 2019).  None

13   of these communications (made via email) repeated the validation notice.[4]  *See* FAC ¶ 31.

14          Ms. Greene's third theory is based on cases finding a violation of the FDCPA –

15   specifically, § 1692g(a) – when "language in a collection letter overshadows or contradicts the

16   validation notice so as to confuse a least sophisticated debtor."  *Terran*, 109 F.3d at 1432.  As

17   noted above, under Ninth Circuit precedent, this issue is a question of law.  *See id.*

18          In *Terran*, the Ninth Circuit surveyed existing circuity authority and noted that

19                  [e]very other circuit that has concluded that section 1692g was
                    violated, in which the least sophisticated debtor standard is applied
20                  involved a written communication containing language regarding
                    *payment* of the alleged debt that contradicted or overshadowed the
21                  validation notice. *See National Fin. Servs.*, 98 F.3d at 139
                    (conflicting time requirements in the demand for payment and the
22                  validation notice violate section 1692g); *Russell*, 74 F.3d at 34
                    (concluding that additional language overshadows and conflicts with
23                  the validation notice because least sophisticated debtor could
                    understand letter to state that "to take any course of action other than
24                  payment . . . within ten days, . . . would permanently affect [the
                    debtor's] credit record"); *Graziano*, 950 F.2d at 111 (holding that
25                  there was a "reasonable probability that the least sophisticated

26   _____

27   [4] The FDCPA does not require that a validation notice be repeated each time a debt collector
     communicates with a consumer within the thirty-day validation period.  Nevertheless, the Court
28   notes that, had TA done so, it could easily have avoided this specific claim made by Ms. Greene.
     Such an approach would be "best practices" for a company and could be easily accomplished.

                                                  15

United States District Court
Northern District of California

United States District Court
Northern District of California

debtor, faced with a demand for payment within ten days and a threat of immediate legal action if payment is not made in that time, would be induced to overlook his statutory right to dispute the debt within thirty days"); *Payco-General American Credits*, 943 F.2d at 484 (requiring debtor to either dispute the debt by phoning "today," or if no dispute by paying "now," is inconsistent with the validation requirement of section 1692g). In each of these cases, *payment was demanded within a time period less than the statutory thirty days granted to dispute the debt and this demand was communicated in a format that emphasized the duty to make payment, and obscured the fact that the debtor had thirty days to dispute the debt. See National Fin. Servs.*, 98 F.3d at 139 (requiring either immediate payment or payment within ten days in "bold commanding type" on front of notice, with validation notice printed in smaller, less visible grey ink on back side); *Russell*, 74 F.3d at 32 (demanding payment within ten days, in all uppercase, selectively bolded typeface, with the validation notice in uppercase, unbolded print on the reverse side); *Graziano*, 950 F.2d at 109 (threatening legal action if no payment within ten days, with validation notice appearing on reverse side); *Safeco Title Ins.*, 758 F.2d 364 (requiring in large, red and black, bold type that debtor dispute debt by phoning "today," or remit payment "immediately," with validation notice printed in grey ink on the reverse side).

*Terran*, 109 F.3d at 1433 (emphasis in original and added).

The Ninth Circuit concluded that the case under consideration was distinguishable from the circuit cases identified above.

Here, the request that the alleged debtor immediately telephone a collection assistant does not overshadow the language in the notice that the alleged debtor has thirty days in which to dispute the debt. The validation notice immediately follows the language regarding an immediate telephone call. The text of the letter is uniformly presented in ordinary, same-size font. No emphasis is placed on any particular statement, with the exception of the creditor's name and the name of the person to contact at Kaplan's office, both of which appear in uppercase letters.

*It is particularly significant that the challenged language in this matter does not require payment "immediately."* It merely requests a phone call. A demand for payment within less than the thirty-day timeframe necessarily requires the debtor to forego the statutory right to challenge the debt in writing within thirty days, or suffer the consequences. For this reason, requiring a payment that would eliminate the debt before the debtor can challenge the validity of that debt directly conflicts with the protections for debtors set forth in section 1692g. The request that the debtor telephone the collection agency does not contradict the admonition that the debtor has thirty days to contest the validity of the debt. This language simply encourages the debtor to communicate with the debt collection agency. It does not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt.

16

*Terran*, 109 F.3d at 1434 (emphasis added); *see also Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*, 290 F.3d 1055, 1057 (9th Cir. 2002) (noting that "[t]he instruction that Renick 'use the tearoff portion of this letter . . . to send your payment today' was in the same font as the surrounding text; was not emphasized in any other way; was in the nature of a request rather than a demand; and carried no sense of urgency," and "[t]he request therefore 'did not overshadow the language in the notice that the alleged debtor has thirty days in which to dispute the debt'"; also, "the statement on the reverse that 'PROMPT PAYMENT IS REQUESTED' was in the same font as the accompanying validation notice; was followed by a statement informing Renick that he had 30 days to challenge the debt's validity; and did not convey a threat that could induce Renick to 'ignore his right to take 30 days to verify his debt and act immediately'").

In contrast, in *Swanson v. Southern Oregon Credit Service*, 869 F.2d 1222 (9th Cir. 1998), the Ninth Circuit did find a FDCPA violation. It explained that "[t]he required debt validation notice is placed at the very bottom of the form in small, ordinary face type, dwarfed by a bold faced, underlined message three times the size which dominates the center of the page" – *i.e.*, "'IF THIS ACCOUNT IS PAID WITHIN THE NEXT 10 DAYS [¶] IT WILL NOT BE RECORDED IN OUR MASTER FILE AS AN UNPAID COLLECTION ITEM. [¶] *A GOOD CREDIT RATING – IS YOUR MOST VALUABLE ASSET*.'" *Id.* at 1225-26 (emphasis in original). According to the court,

> the substance of the language stands in threatening contradiction to the text of the debt validation notice. The prominence and message of the "master file" and "most valuable asset" language, lead the least sophisticated debtor, and quite probably even the average debtor, only to one conclusion: he must ignore his right to take 30 days to verify his debt and act immediately or he will be remembered as a deadbeat in the "master file" of his local collection agency and will, accordingly, lose his "most valuable asset," his good credit rating.

*Id.* at 1226. The key then is whether the communications subsequent to the validation notice overshadows or contradicts the notice by, *e.g.*, demanding immediate payment.

In the instant case, TA has provided, in conjunction with its motion to dismiss, copies of all of the emails referenced in the FAC – both the initial communication and the subsequent communications. *See generally* Brown Decl., Exs. 1-8 (emails). According to TA, even though

17

the Court has before it a 12(b)(6) motion, it is appropriate for the Court to consider this evidence outside the four corners of the complaint because it is evidence "on which the complaint 'necessarily relies' [in that]: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 998-99 (9th Cir. 2011).  In response, Ms. Greene claims that she *does* dispute the authenticity of the emails and therefore the Court should not consider the content of the emails.  Ms. Greene, however, does not provide any basis as to why she believes or has reason to believe that the emails are not authentic.  *See* Opp'n at 14 (simply asserting that "the exhibits . . . have not been properly validated").  Because Ms. Greene has simply made a conclusory objection to the emails, her objection is overruled, and the Court shall consider the emails as part of the motion to dismiss.

According to Ms. Greene, even if the Court does accept the emails as authentic, the emails on their face establish that she has a viable claim for relief.  Information about the emails is provided below.

- Brown Decl., Ex. 2 (email from March 21, 2019).  "We're sorry you didn't find what you were looking for when you visited us online.  [¶] Let's try again!  We know we can solve this together, and we've added a few options for resolving your $10,032.08 CACH, LLC (owner of your Bank of America, N.A. balance) balance that we think you'll like.  [¶] Just click on the link below to give us another chance.  Alternatively, you can reply to this email."  The following "button" then appears: "Try Again."  Below the body of the email (in smaller font) there are links for, *e.g.*, "Unsubscribe" and "Dispute This Debt."  Near the bottom of the email, there is the following language: "The law limits how long you can be sued on a debt.  Because of the age of your debt, CACH, LLC will not sue you for it, and CACH, LLC will not report it to any credit reporting agency."

- Brown Decl., Ex. 3 (email from March 29, 2019).  "You currently owe $10,032.08 to CACH, LLC (current creditor of your original Bank of America, N.A. account).  [¶] Charlyn S, we know this may be confusing.  Here's a breakdown about your

balance: 1. You originally accrued this balance with Bank of America, N.A.  2. CACH, LLC is the creditor who currently owns this balance.  3. TrueAccord is ready to start working with you.  [¶] We're happy to answer any other questions you may have."  The following button then appears: "View My Options."  Below the body of the email (in significantly smaller font) there are links for, *e.g.*, "Unsubscribe" and "Dispute this debt."  Near the bottom of the email, there is the following language: "The law limits how long you can be sued on a debt.  Because of the age of your debt, CACH, LLC will not sue you for it, and CACH, LLC will not report it to any credit reporting agency."

- Brown Decl., Ex. 4 (email from April 1, 2019).  "Here's why I think this balance is yours.  [¶] Your name is Charlyn S. Wilke.  Your address is . . . . [¶] You did business with Bank of America and your outstanding balance is $10,032.08.  Your debt is currently owed to CACH, LLC.  [¶] The original date of the transaction as September 15, 2006.  You accrued this balance with a product called Credit Card.  Your balance went into default on March 14, 2008."  The following button then appears: "I want to pay."  Below the body of the email (in significantly smaller font) there are links for, *e.g.*, "Unsubscribe" and "Dispute This Debt."  Near the bottom of the email, there is the following language: "The law limits how long you can be sued on a debt.  Because of the age of your debt, CACH, LLC will not sue you for it, and CACH, LLC will not report it to any credit reporting agency."

- Brown Decl., Ex. 5 (email from April 5, 2019).  "Dear Charlyn S. Wilke, I have been trying to help you for weeks, and I still want to help.  [¶] You may have a valid reason that you are not paying your outstanding balance.  I am trying to be helpful and you have a part to play too.  [¶] You can help by getting in touch, or you can take a step towards resolving this matter by clicking the button below.  [¶] We are here to help you, so don't hesitate to get in touch."  The following button then appears: "Take a small step."  Below the body of the email (in significantly smaller font) there are links for, *e.g.*, "Unsubscribe" and "Dispute this debt."  Near

1    the bottom of the email, there is the following language: "The law limits how long

2    you can be sued on a debt.  Because of the age of your debt, CACH, LLC will not

3    sue you for it, and CACH, LLC will not report it to any credit reporting agency."

4    • Brown Decl., Ex. 6 (email from April 8, 2019).  "This balance may seem like an

5    unreachable mountain.  [¶] But every journey begins with a single step.  Take the

6    first step and give us a chance to show you some easy payment options."  The

7    following button then appears: "Conquer the mountain."  Below the body of the

8    email (in significantly smaller font) there are links for, *e.g.*, "Unsubscribe" and

9    "Dispute this debt."  Near the bottom of the email, there is the following language:

10    "The law limits how long you can be sued on a debt.  Because of the age of your

11    debt, CACH, LLC will not sue you for it, and CACH, LLC will not report it to any

12    credit reporting agency."

13    • Brown Decl., Ex. 7 (email from April 18, 2019).  "You have an overdue balance of

14    $10,032.08 with CACH, LLC (current creditor of your original Bank of America,

15    N.A. account). [¶] . . . . Your outstanding balance originally owed to Bank of

16    America, N.A. defaulted on March 14, 2008.  CACH, LLC now owns this account.

17    [¶] Make a payment to resolve this important matter."  The following button then

18    appears: "Resolve My Balance."  Below the body of the email (in significantly

19    smaller font) there are links for, *e.g.*, "Unsubscribe" and "Dispute this debt."  Near

20    the bottom of the email, there is the following language: "The law limits how long

21    you can be sued on a debt.  Because of the age of your debt, CACH, LLC will not

22    sue you for it, and CACH, LLC will not report it to any credit reporting agency."

23    • Brown Decl., Ex. 8 (email from April 22, 2019).  "You have an outstanding

24    balance with CACH, LLC (current creditor of your original Bank of America, N.A.

25    account).  [¶] Charlyn S, we're writing to inform you of your outstanding

26    obligation to CACH, LLC (current creditor of your original Bank of America, N.A.

27    account).  [¶] You have access to our flexible online options to resolve this

28    obligation while your account is still with us.  We would like to work with you to

United States District Court
Northern District of California

resolve your balance.  Click the button to view your options and reach out if you have any questions."  The following button then appears: "View Your Options."  Below the body of the email (in significantly smaller font) there are links for, *e.g.*, "Unsubscribe" and "Dispute this debt."  Near the bottom of the email, there is the following language: "The law limits how long you can be sued on a debt.  Because of the age of your debt, CACH, LLC will not sue you for it, and CACH, LLC will not report it to any credit reporting agency."

As reflected by the above, the emails that TA sent are markedly different from the communications that the Ninth Circuit categorized as problematic in *Terran* and *Swanson*.  Even though the email communications clearly convey that TA wants Ms. Greene to make a payment, the communications do not include language requiring that payment be made, or suggesting that payment should be made, prior to the expiration of the thirty-day validation period.  The Court acknowledges that references to the right to "Dispute this debt" are in small font and are arguably buried in the emails; nevertheless, that does not mean that the original validation notice has been overshadowed, particularly given the specific facts before the Court – *i.e.*, not only do the email communications *not* require that payment be made prior to the expiration of the thirty-day validation period but also there is no real urgency to the communications given that the communications also include relatively prominent language stating that, because of the age of the debt, the creditor will *not* sue Ms. Greene for the debt or report it to a credit reporting agency.

In her opposition, Ms. Greene asserts that

> Defendant's contention that its decision not to specifically indicate a deadline is its "get out of jail free" card is preposterous.  Receiving a (loosely defined) validation notice in an email with a link to an unknown website, and thereafter receiving a collection email three hours later and then six more collection emails throughout the next thirty days which all emphasized the amount owed and gave options to begin payment would certainly indicate that payment was being demanded immediately (within the 30 day statutory time period) to the least sophisticated consumer.

Opp'n at 11.  But notably, one of the main cases on which Ms. Greene relies does suggest that a collection letter that does not include a specific deadline for payment (*i.e.*, prior to the expiration of the thirty-day period) passes muster under the FDCPA.

[T]he court does not find the language of the letter here to be a demand for payment before the end of the validation period, even viewing the vague allusion to the next step as a threat of litigation. The letter does not set forth a timeframe for resorting to "other remedies," nor does it otherwise imply that immediate action is necessary.  Contrary to Palmer's arguments, the language "it is imperative that you remit payment in full," while conveying a sense of importance, does not threaten legal action absent immediate payment.  Accordingly, the court finds that Far West's second notice did not contain a demand for payment before the expiration of the thirty day validation period and, thus, did not violate the FDCPA by overshadowing the required 1692g notice."

*Palmer v. Stassinos*, 348 F. Supp. 2d 1070, 1086 (N.D. Cal. 2004) (Whyte, J.).

At bottom, Ms. Greene's position seems to be that multiple demands for payment during the thirty-day validation period violate the FDCPA because they can overshadow the original validation notice and/or amount to a demand for payment prior to the expiration of the validation period.  But Ms. Greene's position is in some tension with the FDCPA to the extent that the Act does not put any express limits on the number of times a debt collector can communicate with a consumer during the validation period.  *See* 15 U.S.C. § 1692g(b) (providing that "[c]ollection activities and communications that do not otherwise violate this title may continue during the 30-day [validation] period . . . unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor"; adding that "collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor").  Although no case has yet so expressly held, the Court acknowledges that the number and timing of communications sent to a consumer could be a relevant factor in whether those communications overshadow the validation notice.  Nevertheless, the number of communications in the instant case – seven within a thirty-day period – is not excessive.  And when that number is taken into consideration along with *other* factors – in particular, the non-threatening content of the communications – the Court does not find it plausible that even the least sophisticated debtor could be misled.[5]  *See, e.g.,*

_____

[5] To the extent Ms. Greene argues that fact discovery is needed "to determine where each clickable button in the collection e-mails would take Plaintiff and to determine the contents of

United States District Court
Northern District of California

*Erekson v. Clarkson & Hale, LLC*, No. 3:18-cv-0032, 2018 U.S. Dist. LEXIS 150604, *24-30 (D.S.C. Sept. 18, 2018) (in case where three letters were sent to plaintiff after the letter containing the validation notice, focusing on the content of each letter); *Robinson v. Transworld Sys.*, 876 F. Supp. 385, 388 (N.D.N.Y. 1995) (in case where plaintiffs argued that, even if they did receive a validation notice, it was "contradicted and overshadowed by both the sheer volume and the language of [at least two] subsequent notices [which contained language relatively more threatening than in the case at bar]," finding summary judgment inappropriate because "[a] reasonable jury could . . . find that the language in both notices considered cumulatively intimates that the consumer must take action immediately and would mislead the least sophisticated consumer into disregarding his validation rights allowing 30 days to dispute a debt").

C.      RFDCPA Claim

        The parties agree that how the Court resolves the FDCPA claim will dictate how the RFDCPA claim.  Because the Court is dismissing the FDCPA claim (all three theories of liabilities), the RFDCPA claim is also dismissed.

///

///

///

///

///

///

///

///

///

///

///

---

each screen," Pl.'s Supp. Br. at 3, she has not alleged that she clicked any of the buttons, except for one and, for that one, she was taken to a website that she did not recognize, and so immediately closed the browser.  *See* FAC ¶ 28.  In short, there is no indication that Ms. Greene ever viewed any content outside of the emails.

United States District Court
Northern District of California

1

### III.   CONCLUSION

2      For the foregoing reasons, the Court grants TA's motion to dismiss on each of the three

3  theories of liability offered by Ms. Greene.  The dismissal is with prejudice because Ms. Greene

4  has not shown that the deficiencies identified by the Court above are capable of being cured.  In

5  other words, amendment would be futile.

6      Accordingly, the Clerk of the Court is ordered to enter a final judgment in accordance with

7  this opinion and close the file in the case.

8      This order disposes of Docket No. 22.

9

10     **IT IS SO ORDERED**.

11

12  Dated: May 19, 2020

13

14  _____

15  EDWARD M. CHEN
    United States District Judge

16